Complainant, being in the business of servicing residences, stores and other buildings, in the matter of exterminating *Page 330 
insect and rodent pests therefrom, engaged defendant Jacob Oser in its employ as a manager and supervisor. The employment contract contained a restrictive covenant by Jacob Oser against his engaging in any similar business in the State of New Jersey, either directly or indirectly, as an individual, partner, stockholder, director, employe, c., for a period of five years after the termination of his employment with complainant.
He left complainant's employ about June 7th, 1938, and immediately engaged in the same kind of business for himself, in the same territory, and solicited the former customers of complainant, and succeeded in obtaining the business of some of them. Complainant filed its bill to restrain him, and applied for restraint pendente lite. Such restraint was granted by order of August 23d 1938, for the reasons set forth in the conclusions filed at that time. No answer to the bill was filed by Jacob Oser; decree pro confesso was taken against him; the allegations of the bill have been duly proven on this final hearing. Complainant is entitled to final decree for the restraint prayed against Jacob, both for the enforcement of the covenant against competition, and against further disclosure of any confidential information obtained in the course of his employment by complainant.
As appears from the uncontradicted proofs on this hearing, Jacob Oser ceased his activities in this competing business, upon the entry of the order for pendente lite restraint, moved to New York City, and has since had no part or parcel in the competing business. That business, — which had been carried on by him under the name of Capital Exterminating Co., — had in fact been a partnership business, by a partnership consisting of himself and his brother Nathan. When Jacob moved to New York in August, the partnership was terminated; Nathan paid to Jacob a sum agreed upon as the value of Jacob's interest in the partnership, and Nathan took over all the assets and continued to conduct the business, under the same name, and to service the customers of the former partnership, including those who had been customers of complainant at the time Jacob left complainant's employ. *Page 331 
Complainant, learning of these activities by Nathan, filed supplemental bill and brought him in as a defendant, prayinginter alia, that Nathan be restrained from servicing the former customers of complainant and from disclosing to anyone else the names of such former customers of complainant. Nathan answered, and contends that complainant is not entitled to any restraint against him as matter of law. There is little, if any, dispute as to the facts.
Nathan was not a party to the restrictive covenant made by Jacob, and complainant's cause of action against Nathan is of course not grounded on the principle of enforcing specific performance of that negative covenant. The gravamen of complainant's right to relief against Nathan rests upon the commission of equitable tort by the latter.
The knowledge which Jacob possessed as to the names and addresses of complainant's customers and their contracts with complainant, was confidential information obtained by him in and by reason of the course of his employment with complainant, including of course those customers whom he may himself have solicited and obtained for complainant during that employment. That information was a property right of complainant; it was not information that was available to or could readily be obtained by the public or any other individual as in the case of NewarkCleaning and Dye Works v. Gross, 97 N.J. Eq. 406.
These customers had been obtained by complainant at the cost of time, trouble and expense in soliciting and obtaining them as customers; their business and contracts with complainant obviously were of value to complainant. Also this information concerning them was of value to any competitor of complainant; it gave to such competitor knowledge as to persons who desired to have exterminating service, and whom such competitor might the more readily expect to be able to procure as customers of his. This is apparent from the fact that Jacob's knowledge of this information was one of the factors discussed by the two brothers preliminary to the formation of the partnership and the institution of its competing business, and which led Nathan to enter into the same. It was a right as to which complainant was entitled to the *Page 332 
protection of this court by injunction against unauthorized divulgence thereof by Jacob, quite irrespective of any covenant by Jacob against competition with complainant. Golden Cruller,c., Co. v. Manasher, 95 N.J. Eq. 537; Stone v. GraselliChemical Co., *65 N.J. Eq. 756; and see also Louis Kamm, Inc., v. Flink, *113 N.J. Law 582, at 589. The instant case is substantially, in all material respects, a duplicate of the situation in the Golden Cruller case, supra.
It is true that in Lewitter v. Adler, 101 N.J. Eq. 74, this court refused to restrain a former employe of a window cleaning concern from soliciting and obtaining for his own use and benefit the trade of the customers of his former employer; and that such refusal appears to have been based on the view of Vice-Chancellor Backes that defendant's knowledge of the names and addresses of complainant's customers, and the frequency of their jobs and the prices paid, was not a confidential knowledge of secret individual information belonging to his employer. This determination is difficult to understand, because the same vice-chancellor, in the Newark Cleaning Co. case, supra, recognized that such knowledge as to the customers of the former employer was the private property of the employer in similar cases, (such as laundries, apron and towel supply companies, and the like), and rested the denial of restraint upon the fact that in the case then before him complainant's customers were middlemen, all known to the trade and whose names and addresses could be ascertained by any one from a city directory or telephone book, and hence did not constitute private orsecret information.
In the case of the window cleaning company, however, just as in the case of the laundry or the towel supply or the milk or bread route, and of the exterminating company in the instant case, — the names and addresses, c., of the complainant's customers are not open to and ascertainable by every one; they are the private information and property of the complainant. That knowledge, being obtained by the defendant, because of and in the course of his employment and services for complainant, cannot lawfully be used or imparted by the former employe, (even though not bound by *Page 333 
a covenant not to do so) for the benefit of the employe or the detriment of the complainant. In so far as the Lewitter case may be deemed support for argument that the restraint should be denied in the instant case, it is in contravention of the principles established by the cases in this court both prior and subsequent thereto, and which principles seem corroborated by the decisions in the appellate court hereinbefore cited.
Complainant is not entitled to, and does not ask, restraint against Nathan's conducting a competing business of his own (Jacob being no longer a partner or having any interest therein). It is however entitled to restraint against Nathan to prevent him from making use, for his own benefit, of this knowledge and information wrongfully disclosed and imparted to him by Jacob. In the eyes of equity Nathan is in the position of a receiver of stolen goods, knowing that they were stolen. He has this information, the property of complainant, which he obtained from Jacob, knowing that it was wrongful for Jacob to give it to him or to utilize it for his own benefit.
Not only did Nathan knowingly participate, as a partner, with Jacob in the latter's violation of his negative covenant, but he also knowingly participated with him in the theft or piracy of the confidential information in question. This information, so acquired, he not only made use of, first, for the benefit of the partnership and himself as a member thereof, but subsequently for himself alone; he is still enjoying the benefit of this piracy. The prior existence of the partnership is of no materiality in the present situation, which is essentially this, — that Nathan acquired from Jacob information which is the property of complainant, knowing that Jacob had no right to give or sell it to him; that he utilized this knowledge to the detriment of complainant and the benefit of himself, in and by soliciting and obtaining for himself, and taking away from complainant divers customers of complainant; that he is still enjoying the fruits of that inequitable conduct and obtaining the profits from the business so obtained. *Page 334 
It is inequitable that he should be permitted so to do. Jacob's wrongful divulging of the information to Nathan has been completed and cannot be prevented or undone; but defendant can be, and should be, restrained from continuing to obtain the profit from his business with the customers he pirated. If he had obtained this information direct from complainant by fraudulent misrepresentation, he would be restrained from further obtaining the benefit of such fraud. That he obtained it, knowingly, through theft or embezzlement by his brother, certainly puts him in no better position.
Complainant is entitled to restraint against further servicing by Nathan Oser of any of his present customers who were customers of complainant at the time Jacob left complainant's employ; against soliciting any such customers of complainant other than by such means as general advertising solicitation of the whole public; and against divulgence to any other person of information as to the names and addresses of such customers of complainant or the nature and character of their contracts with complainant.
That Nathan might well have been able to obtain the trade or business of complainant's former customers by fair and honest competition if he had not entered into this partnership with Jacob, does not operate to prevent complainant's right to the restraint. Nathan did enter into the partnership; he did knowingly obtain these customers as the result of the unfair competition; and it would be impossible to determine in future that any future business by Nathan with these customers was not in whole or in part the result of the unfair competition. Cf.Stone v. Graselli Chemical Co., *65 N.J. Eq. 756, at 762, (middle of page).
The result reached in the instant case is entirely in accordance with principles laid down in Fleckenstein Bros. Co.
v. Fleckenstein, 66 N.J. Eq. 252, at 260 and *Stone v.Graselli Chemical Co., supra, at pp. 759-60, — that where a person (who may be called a "secondary defendant") causes or induces the primary defendant to do an illegal act which equity will enjoin and the direct effect of such illegal act is advantageous to defendants or disadvantageous to complainant, he will be enjoined from continuing to make any gain *Page 335 
resulting from such illegal act, notwithstanding he might have been able to obtain the same result by other fair and honest means entirely aside from such illegal act. In the instant case the "secondary" defendant, Nathan, did not "cause" or "induce" Jacob to do the illegal act, but he did knowingly participate and co-operate with him in so doing; and it is not perceived that there is any difference in principle.
Mention should further be made of the fact that defendant Nathan Oser, in his answer, either denied, or alleged he had no information concerning, every allegation in the bill and the supplemental bill, — as the result of which complainant was put to the trouble and expense of bringing witnesses to prove such allegations; whereas it appeared at the hearing, from the testimony of the two Oser brothers themselves, that all of those allegations were true and were known by defendants to be true, and there was no attempt at contradiction of any material fact.
Such conduct moreover wastes the time of the court; is deserving of censure; and justifies, without more, the award of costs and counsel fee against the party guilty thereof. *Page 336