UNITED STATES of America, Plaintiff,

v.

James R. MAZZARA and Ruth D. Mazzara, Defendants.

Civ. A. No. 80–1546.

United States District Court, D. New Jersey.

Feb. 8, 1982.

D. Patrick Mullarkey, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Zane Bouregy, Hackensack, N. J., for defendants.

## OPINION

SAROKIN, District Judge.

This matter is before the court on motion of plaintiff United States for partial summary judgment against defendants Dr. James Mazzara and his wife, Ruth Mazzara.

Dr. James Mazzara, a surgeon, is a chronically delinquent taxpayer. His unpaid assessments from 1968 through 1978 are alleged to be in excess of $165,000.

Because Dr. Mazzara's tax obligations were seriously in arrears, the government, in 1973, forced the sale of Dr. Mazzara's interest in the house owned jointly by the doctor and his wife. At the sale, Mrs. Mazzara purchased her husband's interest for $5,000, thereby acquiring the property in her name only. Later in 1973, the Mazzaras sold the house, realizing about $45,000 from the sale. Using the proceeds obtained from the sale of the house, the Mazzaras, about one year later, purchased the current residence. Title to the house was taken in Mrs. Mazzara's name only, but the mortgage was executed in the joint names of Dr. and Mrs. Mazzara.

Mrs. Mazzara admits that from 1967 through 1978, she had no independent source of income and that she relied on her husband to provide all living expenses. From 1972 through 1978, Dr. Mazzara transferred substantial sums of money to his wife. These monies were allegedly transferred because Ruth Mazzara was a better manager of finances than was her husband. Mrs. Mazzara claims that all monies received by her were applied to the support of the family, to the mortgage and maintenance of the house, to satisfy debts

incurred in the course of Dr. Mazzara's business and to extinguish part of Dr. Mazzara's tax liability.

The United States seeks to reduce to judgment Dr. Mazzara's tax liability for the years 1968 through 1972 and 1974 through 1978. Dr. Mazzara's taxes for 1973 have already been paid by Mrs. Mazzara with funds given to her by her husband. In addition to seeking a judgment against Dr. Mazzara, the government seeks to hold Mrs. Mazzara liable as a fraudulent transferee for an amount which is the lesser of Dr. Mazzara's tax liability for the years 1968 through 1977, or the amount of the transfers made by the doctor to his wife. Because the transfers ceased in 1978, the United States is not attempting to hold Mrs. Mazzara liable for her husband's 1978 taxes.

The government does, however, seek to sell the Mazzara residence and apply Dr. Mazzara's portion of the proceeds to his indebtedness. The government contends that Mrs. Mazzara not only used her husband's money to make payments on the mortgage and maintain the house, but also that she used his money to purchase his interest in her name at the distraint sale. Because Dr. Mazzara has an interest in the current residence and is indebted to the government, the Internal Revenue Service placed a nominee lien on the residence in September 1978, in the name of Ruth Mazzara. Although Mrs. Mazzara denies that she used Dr. Mazzara's money to purchase his interest in the old house, she has not indicated the source of the money for the purchase.

The defendant argues that the United States is not entitled to summary judgment against Dr. Mazzara because it has not established the accuracy of its claim for interest and penalties, nor has it explained its method of calculation. Defendant also argues that plaintiff is not entitled to summary judgment against Mrs. Mazzara because the transfers were made to her to satisfy Dr. Mazzara's continuing obligation of support to his family and thus constituted a satisfaction of an antecedent debt, which is not a prohibited transaction under New Jersey's fraudulent conveyance statute.

Defendant further contends that Mrs. Mazzara, as manager of her husband's funds, was an agent for him and thus was entitled to pay her husband's debts without thereby becoming a fraudulent transferee. In addition, defendant contends that the government delayed in pursuing its claim against Mrs. Mazzara and, therefore, is now barred by laches. Defendant also maintains that although the government knew or should have known of the transfers in 1972, it nevertheless allowed them to continue so that Mrs. Mazzara's liability would increase substantially. Thus, defendant contends, the government has unclean hands and should not be permitted to pursue its equitable claim.

Finally, Mrs. Mazzara seeks to prohibit the sale of the house. She argues that even if title is held jointly by herself and her husband, the government cannot order a sale of the property, because it is held by the entirety and because she owes nothing to the government.

DISCUSSION OF THE LAW

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the record discloses that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Defendants do not deny that Dr. Mazzara's tax payments are in arrears; only the amount of his liability is in dispute. The plaintiff has filed with the court an affidavit, signed by an officer of the Internal Revenue Service, which details Dr. Mazzara's total tax liability, including interest and penalties. This affidavit is entitled to a presumption of correctness, *Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir. 1971), and unless the defendant places into the record evidence of an error in the computation, the defendant will not survive a motion for summary judgment. Here, the defendant has failed to demonstrate any problem with the methodology used by the IRS in its computation of Dr. Mazzara's total tax liability. Defendant only contends that the burden is upon the government to establish

the accuracy of its claim for unpaid tax assessments. This contention is erroneous. *Id.* Therefore, the court will enter judgment against Dr. James Mazzara, in the amount of $270,982.87 for his unpaid tax liabilities, including penalties and interest, for the years 1968 through 1972, and 1974 through 1978. The court will also enter judgment against Dr. Mazzara for penalties accruing at the rate of $249.44 monthly beginning on June 16, 1981, together with interest on the total unpaid liability of $52.94 per day from June 12, 1981.

The court must next determine whether Mrs. Mazzara is liable to the government as a fraudulent transferee of her husband's funds. This determination is controlled by state law. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958).

Fraudulent conveyances are prohibited in New Jersey by statute:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. N.J.Stat.Ann. § 25:2–10.

Under N.J.Stat.Ann. § 25:2–9, fair consideration is given for property or obligation:

a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

Neither plaintiff nor Mrs. Mazzara dispute that Dr. Mazzara was insolvent when the transfers were made. Therefore, this court, in determining whether the transfers were fraudulent, need only inquire into whether a "conveyance" was made within the meaning of the statute

and, if such a conveyance is found to have been made, whether it was in satisfaction of an antecedent debt. In analyzing this question, the court bears in mind that the purpose of the fraudulent conveyance statute is to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof. *Townsend v. McGrain*, 43 N.J.Super. 438, 441, 128 A.2d 875 (Ch.Div.1957).

Defendants allege that the funds received by Mrs. Mazzara were used to support the family, to satisfy debts incurred by Dr. Mazzara in the course of his professional occupation, and to extinguish part of Dr. Mazzara's tax liability. These transfers, defendants contend, were not fraudulent for two reasons. First, Dr. Mazzara owed his wife and family a continuing obligation of support which constituted an antecedent debt. Thus, monies transferred to Mrs. Mazzara in satisfaction of that debt are not prohibited by the fraudulent conveyance statute. Second, defendants contend that Mrs. Mazzara, in her role as financial manager, acted as her husband's agent and that, therefore, she cannot be held personally liable for making payments on her husband's debts.

This court cannot accept the first of defendants' contentions, that the continuing obligation of support constitutes a debt within the meaning of the fraudulent conveyance statute. For a debt to be found under the statute, the debtor must have received something in money or money's worth. *See e.g., Johnson v. Lentini*, 66 N.J.Super. 398, 169 A.2d 208 (Ch.Div.1961). Thus, if Mrs. Mazzara had borrowed money and advanced it to her husband so that he could carry out his obligation of support, and Dr. Mazzara later repaid her, that transfer of funds would not be fraudulent since Dr. Mazzara had received something in money or money's worth. *See Orbach v. Pappa*, 482 F.Supp. 117 (S.D.N.Y.1979). Here, Mrs. Mazzara did not advance any money to her husband. Nor can it be said that Dr. Mazzara constructively or impliedly promised to reimburse his wife for her

services. If this court were to allow such a claim, insolvent debtors could easily circumvent the fraudulent conveyance statute by making transfers to family members under the pretense that such transfers were made in reimbursement for past services.

■■ The second of defendants' contentions is more plausible, that Mrs. Mazzara, in her capacity as financial manager, acted as her husband's agent and that, therefore, she cannot be held personally liable for receiving money from her husband and using it to pay his debts. The record indicates that Dr. Mazzara was incapable of managing his own financial affairs. He therefore sought the assistance of his wife. Although his wife was not completely successful in ordering his finances, the record shows that Mrs. Mazzara paid the I.R.S. over $95,000 in partial satisfaction of Dr. Mazzara's tax liability. The government is now seeking to hold Mrs. Mazzara personally liable for monies transferred to her which were used to pay legitimate debts of Dr. Mazzara. If Dr. Mazzara had made these payments himself, certainly Mrs. Mazzara could not be held liable even if she benefitted therefrom. Because the transfers were first made to an agent, however, and then to the creditor, plaintiff attempts to hold the agent liable as a fraudulent transferee. Such a result could not have been contemplated by the legislature in enacting the statute. The statute was enacted to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof. *Townsend v. McGrain*, 43 N.J.Super. 438, 441, 128 A.2d 875 (Ch.Div.1957). Here, Dr. Mazzara's wife used much of the transferred money to pay the doctor's creditors. Where payments to bona fide creditors were made, no enjoyment over the property was retained by Dr. Mazzara. This court therefore holds that where a principal conveys money to an agent and that money is used by the agent to satisfy debts of the principal, a conveyance, within the meaning of N.J.Stat.Ann. § 25:2–10, has not taken place between the principal and the agent.

■ Mrs. Mazzara will therefore not be held liable as a fraudulent transferee for those monies which were used by her to satisfy her husband's antecedent debts. She will, however, be liable for those monies received by her which were not used to satisfy Dr. Mazzara's antecedent debts. The court will order that a hearing be held to determine which monies were used by Mrs. Mazzara to satisfy her husband's antecedent debts and which monies were held by her as a fraudulent transferee.[1] The court finds that the government is not barred by laches in pursuing its claim against Mrs. Mazzara. The United States, when asserting "sovereign" or governmental rights is not subject to either state statutes of limitations or to laches. *Chesapeake and Delaware Canal Co. v. United States*, 250 U.S. 123, 125, 39 S.Ct. 407, 408, 63 L.Ed. 889 (1919). In addition, the court finds that the plaintiff in this action does not have "unclean hands." The government did not attempt to enhance Mrs. Mazzara's liability by deferring action on its claim against her. During the period in question, Dr. Mazzara entered into two payment agreements with the government in which he promised to pay all of his tax obligations. While these agreements were in effect, the I.R.S. took no action to collect any of Dr. Mazzara's tax liabilities. It was not until Dr. Mazzara defaulted on both of these agreements that the government determined that further measures had to be taken.

■ Finally, because Mrs. Mazzara used funds of her husband to purchase his interest in the old house, and because funds from the sale of that house were used to purchase the Mazzaras' current residence, the court will enter an order permitting the government to sell the residence and apply the net proceeds to Dr. Mazzara's outstanding tax liabilities.

A court-ordered sale of the house is permitted under 26 U.S.C. § 7403. The statute states, in pertinent part:

---

1. Such a hearing will not be necessary if the parties can agree upon an appropriate alloca-

tion consistent with this Opinion.

(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability *or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title or interest, to the payment of such tax or liability. . . .*" (emphasis supplied.)

The majority of circuit courts which have interpreted this provision have held that so long as a delinquent taxpayer has an interest in property, the entire property may be sold irrespective of any interest held in the same property by an individual not indebted to the government. *United States v. Kocher*, 468 F.2d 503 (2d Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973); *United States v. Overman*, 424 F.2d 1142 (9th Cir. 1970); *Washington v. United States*, 402 F.2d 3 (4th Cir. 1968), *cert. denied*, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971); *United States v. Trilling*, 328 F.2d 699 (7th Cir. 1964).

Defendants urge that this court reject the interpretation given to 26 U.S.C. § 7403 by the majority of circuit courts which have considered the statute. Defendants claim that this court, instead, should adopt the interpretation given to the statute by the Fifth Circuit in *Folsom v. United States*, 306 F.2d 361 (5th Cir. 1962). In *Folsom*, a delinquent taxpayer owned property jointly with five other individuals. The government had a lien on Folsom's one-sixth undivided interest in the property and sought to sell the entire property pursuant to Section 7403. The court held that the government could not, under Section 7403, enforce its lien against the taxpayer by forcing a sale of the property of the taxpayer's five joint owners. The court stated, "The Government cannot, as a lienholder and under the guise of 'enforcement', project itself into a position of a property owner entitled to the incidents of property ownership as fixed by the property laws of the state involved." *Id.* at 368.

The Fifth Circuit's view in *Folsom* not only conflicts with the view of four other circuit courts but is also contrary to the express language of the statute. Criticizing the view of the Fifth Circuit in *Folsom*, the Seventh Circuit, in *United States v. Trilling*, 328 F.2d 699 (7th Cir. 1964), stated:

*Folsom* overlooks the fact that in § 7403 Congress has expressly authorized the district court to subject 'any property' in which the delinquent taxpayer 'has any right, title, or interest' to the payment of 'such tax or liability'; has required that 'all persons' claiming any interest 'in the property involved' be made parties to the proceeding; and has empowered the court to order a sale 'of such property' and direct distribution of the proceeds of such sale according to the 'interests of the parties and of the United States'. *The express language of the statute negates any design or intent on the part of Congress to limit the reach of the statute to the 'interest' of the taxpayer as distinguished from the 'property' in which he has such 'interest'. Id.* at 703 (emphasis supplied.)

Even if the court were inclined to adopt the reasoning of the Fifth Circuit in *Folsom*, the facts of this case are clearly distinguishable. The only other interest affected by a forced sale in this matter is that of the delinquent taxpayer's wife. She has benefitted directly by the nonpayment of taxes and the utilization of such funds to acquire and maintain the subject residence. She does not stand in the same posture of an innocent partner who has not benefitted from such nonpayment of taxes. The sale of the premises should not be prohibited where both owners have directly benefitted from such nonpayment. Although Mrs. Mazzara may not be personally liable for the taxes due from her husband, certainly the government should be able to trace his funds and obtain satisfaction out of what has been acquired therefrom. To hold oth-

erwise would make a mockery of the tax laws and their enforcement procedures.

Defendants urge that if this court declines to follow the decision of the *Folsom* court, that it instead adopt the reasoning of the court in *United States v. Eaves,* 499 F.2d 869 (10th Cir. 1974). In *Eaves,* the Tenth Circuit held that Section 7403 does not make foreclosure an "all or nothing" proposition. *Id.* at 871. Instead, the court found that Section 7403 confides discretion in the trial judge to determine whether a forced sale would be equitable. *Id.* Although the court does have such discretion, the facts of this case warrant its exercise to require, rather than prohibit, a sale of the subject premises.

Mrs. Mazzara has not placed any facts on the record to dispute the government's contention that the $5,000 which she paid to obtain Dr. Mazzara's interest in the old house, came from Dr. Mazzara himself. Mrs. Mazzara's failure to place such facts on the record is consistent with her deposition testimony that she had no independent source of income from 1967 through 1978, and that all money for living expenses came from her husband. Moreover, Mrs. Mazzara admits that all mortgage payments on the current residence and all payments to maintain the home came from Dr. Mazzara. It is therefore apparent that Dr. Mazzara owns some interest in the current residence even though only his wife appears as the owner of record.

Because Dr. Mazzara has an interest in the property, this court orders that the property be sold to enforce the government's lien. Such an order is consistent with the reasoning of the majority of circuit courts which have reviewed Section 7403. This court will not exercise its equitable powers to prevent a sale because, as indicated above, Mrs. Mazzara has benefitted from her husband's malfeasance.

After the sale is conducted, a hearing will be held to determine the amount of the proceeds to which each person with an interest in the property is entitled, including Mrs. Mazzara. At that time, the court will also determine the nature and extent of the interest held by Dr. Mazzara in the property.

Finally, this court rejects defendants' argument that this procedure violates the due process rights of Mrs. Mazzara. Pursuant to Section 7403, Mrs. Mazzara has been given notice and a hearing. In addition, although there will be a "taking" by the government, Mrs. Mazzara will be justly compensated for her loss from the proceeds of the sale. *United States v. Overman,* 424 F.2d 1142, 1146 (9th Cir. 1970).

For the foregoing reasons, plaintiff's motion for summary judgment is granted and a hearing will be held consistent with this Opinion.