261 N.J. Super. 495 (1993)
619 A.2d 592
AYR COMPOSITION, INC., PLAINTIFF-APPELLANT,
v.
FRED ROSENBERG, TOM MARGUCCIO DEFENDANTS-RESPONDENTS CROSS-APPELLANTS, AND CHERENSON, CARROLL & HOLZER, A CORPORATION OF THE STATE OF NEW JERSEY TRADING UNDER THE FICTITIOUS NAME OF THE CHERENSON GROUP, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1992.
Decided January 8, 1993.
*498 Before Judges DREIER and SKILLMAN.
Antonio Inacio argued the cause for appellant (Mr. Inacio, on the brief).
Dore R. Beinhaker argued the cause for respondents-cross-appellants (Gulkin & Beinhaker, attorneys; Alexander J. Graziano, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff, AYR Composition, Inc. (AYR), appeals from a judgment in its favor in the Superior Court of New Jersey, Law Division, Union County, which limited damages to commissions earned by defendants Rosenberg and Marguccio on accounts transferred to Cherenson, Carroll & Holzer, a corporation (Cherenson). Plaintiff seeks modification of the trial judge's award of damages to state a fixed sum to be recoverable personally against defendants Rosenberg and Marguccio. Defendants Rosenberg and Marguccio cross-appeal from the trial judge's entire order granting the summary judgment against them.
On November 22, 1989, plaintiff filed a separate complaint against Rosenberg/Marguccio, Inc. (R/M) for collection of sums due and owing to AYR. Plaintiff recovered final judgment by default on January 24, 1990 in the amount of $60,160.70 plus costs of $129.90. Post-judgment execution left a *499 balance due of over $70,000.00 on the judgment, including post-judgment interest.
On July 23, 1990, plaintiff instituted the current action against Rosenberg, Marguccio and Cherenson, alleging violation of the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq. Plaintiff also claimed the right to pierce the corporate veil and obtain judgments against defendants Rosenberg and Marguccio for the amount of the judgment obtained against R/M.
Cherenson was dismissed with prejudice from the action on June 26, 1991, whereupon plaintiff filed its second motion for summary judgment against the remaining defendants, Rosenberg and Marguccio. The judge granted AYR's motion, but limited plaintiff's damages to the amount of commissions earned by Rosenberg and Marguccio on the accounts which they brought to Cherenson. Plaintiff appeals from this limitation.
Plaintiff, AYR, is a New Jersey corporation engaged in the business of typesetting. Defendants Rosenberg and Marguccio are the former and sole directors, officers and principals of R/M. Plaintiff filed suit and obtained the final judgment noted earlier against R/M for $60,160.70, plus costs, for outstanding invoices due plaintiff. Post-judgment execution proceedings recovered only $947.02 for plaintiffs.[1]
On Friday, February 2, 1990, a newspaper article in The Star Ledger announced that R/M had "merged" with The Cherenson Group advertising agency. On Sunday, February 4, 1990, a paid advertisement appeared in The Star Ledger announcing that R/M had "joined" with The Cherenson Group. Depositions of Rosenberg and Marguccio, conducted by plaintiff on March *500 13, 1990, revealed the following information about the corporate demise of R/M.
Rosenberg and Marguccio were the sole directors, and officers of R/M, and Mr. and Mrs. Rosenberg were R/M's sole shareholders. Defendants decided in January 1990 to cease doing business as R/M. Accordingly, R/M ceased doing business as of February 1, 1990, although defendants did not file a certificate of dissolution with the State of New Jersey. Rosenberg and Marguccio subsequently acquired employment with Cherenson, as did two of the three other R/M employees. In addition to R/M's office furniture and equipment, which had been levied upon by the Essex County Sheriff, defendants also brought to Cherenson ten to twenty of R/M's accounts, some of which owed money to R/M, R/M's client list, and R/M's telephone number (which was programmed to transfer all calls made to R/M's South Orange place of business to Cherenson). Only defendants' bookkeeper, who was away in Europe and who had not yet closed the corporation's books when R/M ceased doing business, was left out of the move to Cherenson. R/M maintains no inventory.
Defendant Rosenberg's written employment agreement with Cherenson, signed on January 24, 1990, contained the following paragraph which transferred all R/M accounts to Cherenson:
1. Employment. Employer hereby employs Employee to service and supervise advertising and public relations accounts which shall include: (a) accounts with which Employee has dealt in the past in his individual capacity or in his capacity as a principal, agent or employee of other firms (the "Rosenberg Accounts"), a complete list of which is annexed hereto as Schedule "A".... Employee represents and warrants to Employer that he is not subject to a restrictive covenant with any prior employer or firm with which he has ever been affiliated and that he is free to deal with any account with which he has dealt in the past. In addition to servicing and supervising the stated accounts, Employee will assist Employer's management team to increase and build new business.
After hearing arguments from both parties, the trial judge concluded that defendants had breached their fiduciary duty to R/M and had transferred R/M's sole lucrative asset, R/M's accounts, to Cherenson.

*501 The facts in this case show that Defendants, the sole shareholders, directors and officers, who owed a duty to the Corporation, took all of the assets of the Corporation. They made no attempts to wind up corporate affairs. While the Corporation was being sued they began negotiations to secure employment elsewhere, and used the customers they intended to bring with them from R/M Inc. as a bargaining tool to obtain employment. And not only did they take the customers, they took the Corporation's employees and its office furniture and computers to their new employer.
In their capacities as directors, officers and shareholders of R/M Inc., Defendants owed a fiduciary duty to the Corporation. This duty includes an obligation not to take action which would be adverse to the Corporation's interest. In other words, an officer or director has a duty of loyalty to the Corporation; this duty means that a director or officer may not use information he has gained in his capacity as a director or officer, against the interests of the Corporation.
It is clear to this Court that the Defendants in this case blatantly breached this duty. As directors and officers of R/M Inc. they were privy to all the details surrounding the Corporation's customers; i.e., they knew who the customers were, they knew what type of services the customers required, they knew the worth of that customer to the Corporation, the size of the account. The Court considers it an absolute breach of their duty to the Corporation for the Defendants to take all of this information, approach a competing advertising agency, and secure employment with that other agency on the understanding that Defendants would bring R/M Inc.'s customers with them. These acts were deliberately done; they were against the interests of R/M Inc. They were done in bad faith and without regard to the duties owed to the Corporation.
The trial judge also reached the conclusion that R/M's customer lists were a corporate asset of R/M.
On appeal, plaintiff asserts solely that the trial court should have found Rosenberg and Marguccio personally liable and should therefore have awarded plaintiff the sum certain due from the judgment against R/M. Defendants respond by asserting that there were factual issues precluding the entry of summary judgment, that the customer list was not a corporate asset, and that defendants breached no duty to R/M, which was insolvent and out of business.
In their deposition testimony, defendants candidly admitted that they moved all of R/M's office furniture, active accounts and four of R/M's five employees to Cherenson. All telephone calls were automatically forwarded. All of this occurred before R/M's accountant closed the corporation's books and before defendants filed a certificate of dissolution with the State of *502 New Jersey. With these transfers, R/M ceased to exist for practical purposes and announced to the public that it had "merged" with the Cherenson Group. During all of these changes, plaintiff possessed a judgment against R/M.
N.J.S.A. 25:2-25 defines certain transfers as fraudulent as a matter of law.
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation:
a. With actual intent to hinder, delay, or defraud any creditor of the debtor....
In order to determine fraudulent intent as a matter of law, trial judges may give consideration to, inter alia, any of the eleven factors enumerated in N.J.S.A. 25:2-26. In his grant of summary judgment, the trial judge identified six of eleven N.J.S.A. 25:2-26 factors as applicable to defendants, and the judge thoroughly applied the facts of the case to support each finding. Specifically, the judge ruled that consideration of the following factors determined fraudulent intent in defendants' case:
a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
....
e. The transfer was of substantially all the debtor's assets;
....
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred....

[N.J.S.A. 25:2-26].
Accordingly, defendants' transfer of assets to Cherenson was a fraudulent conveyance as a matter of law. See United States *503 v. Mazzara, 530 F. Supp. 1380, 1383 (D.N.J. 1982), aff'd 722 F.2d 733 (3d Cir.1983).
Defendants claim that because the trial judge only found six of eleven suggested statutory factors to determine fraudulent intent, there remain several issues of fact concerning defendants' transfer of R/M's assets to Cherenson. This argument is without merit. N.J.S.A. 25:2-26 states that "consideration may be given, among other factors," to the eleven enumerated issues. Furthermore, defendants cannot create a material issue of fact merely by arguing the merits of the trial judge's citation and explanation of a statutory factor, when other such factors remain unchallenged.
In reaching his decision to grant summary judgment for plaintiff, the trial judge also concluded that R/M's advertising accounts were corporate assets. Defendant claims that this issue is one of first impression and that the trial judge erroneously concluded that such accounts were assets as a matter of law. This court previously addressed a similar issue briefly in Hollister v. Fiedler, 22 N.J. Super. 439, 92 A.2d 52 (App.Div. 1952), modified on other grounds, 17 N.J. 239, 111 A.2d 57 (1955). In Hollister, we decided that customer lists were a valuable asset of an insurance company:
In the conduct of an insurance business, aside from the ability of the salesman to obtain customers to purchase insurance contracts, perhaps the most valuable asset is information as to who may be in the market for insurance protection and when the most likely time would be to solicit them. That pertinent information is obtained from the list of expirations or records or renewal dates for existing insurance contracts.... In fact, the accountant testified "If you took the expirations away from the business, you would have no business."

[Id. 22 N.J. Super. at 445, 92 A.2d 52].
In a related area, New Jersey courts have previously approached the issue of whether customer accounts are corporate property in cases dealing with an employee's duty of loyalty to the employer not to act contrary to the employer's interest. See Chernow v. Reyes, 239 N.J. Super. 201, 206, 570 *504 A.2d 1282 (App.Div.), certif. denied, 122 N.J. 184, 584 A.2d 245 (1990) (absent non-competition covenant, employer's damages limited to those profits former employee earned by diverting customers of employer while working for employer); Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 423, 416 A.2d 952 (App.Div. 1980) (employee "may not solicit his employer's customers for his own benefit before he has terminated his employment"). Where there is either a post-employment restrictive covenant or where the customer lists are confidential and thus a trade secret, customer lists may be protected even after employment is terminated. See United Board & Carton Corp. v. Britting, 61 N.J. Super. 340, 160 A.2d 660 (App.Div.), certif. denied, 33 N.J. 326, 164 A.2d 379 (1960) (former employees restrained for two years from doing business with those customers they courted while still in plaintiff's employ); Abalene Exterminating Co., Inc., v. Oser, 125 N.J. Eq. 329, 333, 5 A.2d 738 (Ch. 1939) (employee restrained from using customer list of former employer).
Where a company's business is to provide services, information about customers is a property right of the company. Abalene Extermination Co., Inc., v. Oser, supra, 125 N.J. Eq. at 331, 5 A.2d 738. This is proper because a service company must obtain its customers "at the cost of time, trouble and expense in soliciting and obtaining them as customers...." Ibid. Where a service company is concerned, the names and addresses of its customers "are not open to and ascertainable by every one; they are the private information and property" of the company. Id. at 332, 5 A.2d 738; but cf. Haut v. Rossbach, 128 N.J. Eq. 77, 78, 15 A.2d 227 (Ch. 1940), aff'd, 128 N.J. Eq. 478, 17 A.2d 165 (1941) (customers are not assets where company is a "manufacturer or wholesaler dealing with jobbers or retail merchants").
The trial court thus properly ruled that the customers and accounts of R/M, an advertising agency, were the corporation's assets. As the trial judge correctly observed, "Whatever *505 life R/M Inc. had in it was snuffed out when Defendants took its customers."
Defendants offer no legal support for their claim that they owed no fiduciary duty to R/M, and this court finds none. As the sole directors and officers of R/M, defendants not only owed a fiduciary duty to R/M while it remained in existence, but they also owed a quasi-trust duty to plaintiff, as R/M's creditor, when R/M became insolvent. Portage Insulated Pipe Co. v. Costanzo, 114 N.J. Super. 164, 166, 275 A.2d 452 (App. Div. 1971) ("When a corporation becomes insolvent a quasi-trust relationship arises between its officers and directors on the one hand and its creditors on the other"); Matter of Stevens, 476 F. Supp. 147, 153 n. 5 (D.N.J. 1979) (In this quasi-trust relationship, officers "cannot prefer one creditor over another, and they have a `special duty not to prefer themselves'"); cf. Francis v. United Jersey Bank, 87 N.J. 15, 36, 432 A.2d 814 (1981) ("While directors may owe a fiduciary duty to creditors also, that obligation generally has not been recognized in the absence of insolvency").
Accordingly, the trial judge did not misapply the law to the facts of this case in finding that defendants owed R/M a fiduciary duty even though R/M was insolvent.
After thoroughly reviewing the facts of this case, the trial judge issued the following ruling to accompany his order of summary judgment:
The Court considers [it] an absolute breach of [defendants'] duty to the Corporation for the Defendants to take [R/M's customer list], approach a competing advertising agency, and secure employment with that other agency on the understanding that Defendants would bring R/M Inc.'s customers with them. These acts were deliberately done; they were against the interests of R/M Inc.; they were done in bad faith and without regard to the duties owed to the Corporation and they breached the fiduciary duty.
I believe this is a classic example written in text books on when and why a corporate [veil] should be pierced. The Defendants, individually, are liable only to the extent of the commissions that monies earned from the accounts that they've taken over to the new corporation.
*506 Absent fraud or injustice, courts generally will not pierce the corporate veil. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). New Jersey courts, however, will ignore a corporate identity, pierce the corporate veil, and hold the corporate principals personally liable, where they fraudulently transfer corporate property in the face of known legal action. State, Dept. of Envtl. Protect. v. Ventron Corp., 94 N.J. 473, 500, 468 A.2d 150 (1983); Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc., 248 N.J. Super. 426, 441, 591 A.2d 661 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991) (collecting relevant cases); John R. Steele & Associates, Inc. v. Villante, 659 F. Supp. 157, 158 (D.N.J. 1987). Imposing personal liability satisfies the purpose of the doctrine of piercing the corporate veil, which "is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law...." State, Dept. of Envtl. Protect. v. Ventron Corp., 94 N.J. at 500, 468 A.2d 150 (citations omitted).
Whether we grant plaintiffs their remedy on the basis of a fraudulent conveyance or on the basis of piercing the corporate veil as of the time the conveyance was made, defendants Rosenberg and Marguccio are personally liable for the full amount of the assets they transferred to Cherenson. This remedy is in addition to those provided by the Fraudulent Transfer Act, N.J.S.A. 25:2-29 and 30. But the principals are not, as suggested by plaintiff, liable for all of the corporate debts of R/M. For example, if a corporation has $500,000 in debts and the corporate principals improperly transfer a few thousand dollars worth of corporate property, representing the final assets of the corporation, it would be highly unfair to charge the principals with the total corporate indebtedness which may have arisen over many years of corporate existence when the corporate form was scrupulously followed. The principals should be responsible only for the effects of their actions. In this case, Rosenberg and Marguccio are liable solely for the fair market value of the assets they transferred to Cherenson, *507 valued as of the date of transfer. This may or may not be equal to the full amount originally claimed. It also may or may not be equal to the commissions generated from the transferred accounts, which was the measure of damages chosen by the trial judge.
Plaintiff has the burden of proof to demonstrate both defendants' liability and the amount of damages chargeable to defendants. While the liability of R/M in the earlier law suit was clearly demonstrated to be the amount of the open bills, now approximately $70,000, the maximum individual responsibility of Rosenberg and Marguccio is measured by the value of the transferred assets. Given the factual dispute concerning such value, summary judgment on this issue was mistakenly entered.
The value of a particular account when transferred may be unrelated to the income later received. The income received may be a factor in this proof, but it is not the sole measure of damages. Post-transfer income may be generated solely because the account was developed or materially changed through Cherenson's efforts. On the other hand it may be nothing more than a continuation of the income previously earned on the account less the expenses necessary to develop the account and discounted to the date of transfer. It also may be true that a particular account had substantial value, but for some extraneous reason was abandoned or lost by Cherenson. A conflict of interest, a clash of personalities or other bases could have caused a valuable account to have generated no income to the transferee. Plaintiff may be able to show through expert testimony how accounts transferred in the advertising industry are valued. Furthermore, the good will of the R/M agency, including its telephone number, general customer lists, employee base and the like may likewise have a value ascribed by suitable expert testimony. We reiterate, however, that the measure of damages is not the gross or net *508 income from any particular account or accounts, but rather the sum of their fair market values as of the date of transfer.
In short, we sustain the trial judge's determination of both a fraudulent conveyance and a piercing of the corporate veil, thus sustaining the liability judgments against the individual defendants. The damages portion of the summary judgment, however, must be reversed and remanded to the trial judge for trial after a suitable period for discovery.[2]
The liability judgment is affirmed; the portions of the final judgment relating to damages are reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] In January 1990, the Sheriff of Essex County levied upon all of the right, title and interest of R/M at its office at 15 South Orange Avenue, South Orange, New Jersey. The Sheriff's levy inventoried only a few pieces of office furniture, three typewriters and two computers.
[2] Due to the passage of time, plaintiff must be afforded a new opportunity to determine the value of the transferred assets as of the transfer date. It may secure an expert after defendants and Cherenson disclose all relevant data concerning the transferred accounts for a reasonable period both before and after the transfer.