

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2002

# Bd Trustees 863 v. Foodtown Inc

Precedential or Non-Precedential: Precedential

Docket No. 01-2542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Bd Trustees 863 v. Foodtown Inc" (2002). *2002 Decisions*. Paper 402.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/402

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 17, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2542

BOARD OF TRUSTEES OF TEAMSTERS LOCAL 863
PENSION FUND,

        Appellant

v.

FOODTOWN, INC., MARTIN VITALE; RONALD GINSBERG;
HY SHULMAN; NICHOLAS D'AGOSTINO; GEORGE P.
FARLEY; JOSEPH AZZOLINA; VICTOR LARACCA;
GERARD NORKUS; RON DICKERSON; SYDNEY KATZ;
WILLIAMS MICHAS; DONALD NORKUS; EDMUND J.
PACZKOWSKI; JACK PYTLUK; MICHAEL ZIMMERMAN;
DAVID MANIACI; WILLIAM DAVIDSON; FOOD CIRCUS
SUPERMARKETS, INC.; NORKUS ENTERPRISES, INC.;
NORKUS, INC.; NORKUS FOODTOWN, INC.; DAVIDSON
SUPERMARKET, INC.; DAVIDSON BROTHERS, INC.;
FRANELEN, INC.; NICHOLAS MARKETS, INC.; FOOD
KING, INC.; WEST ESSEX FOODTOWN, INC.; L.J.V., INC.;
E. DICKERSON & SON, INC.; P.S.K. SUPERMARKETS,
INC.; MANYFOODS, INC.; FRANCIS MARKETS, LTD;
HARP MARKETING CORPORATION; SIDNEY CHARLES
MARKETS, INC.; D'AGOSTINO SUPERMARKETS, INC.;
V&V, INC.; NEPTUNE CITY LIQUORS, INC.;
JOHN DOES 1-50; ABC CORPORATIONS 1-5;
ABC CORPORATIONS 1-50

On Appeal from an Order Entered in
the United States District Court
for the District of New Jersey
D.C. Civil No. 99-cv-03333
United States District Judge:
Honorable Harold A. Ackerman

Argued: April 11, 2002

Before: McKEE and FUENTES, Circuit Judges, and
POGUE, Judge, United States Court of International Trade*

(Opinion Filed: July 17, 2002)

        Kenneth I. Nowak (Argued)
        Zazzali, Fagella, Nowak, Kleinbaum
         & Friedman
        Newark, NJ 07102-5410

         Attorney for Appellant

Roger D. Netzer (Argued)
Willkie, Farr & Gallagher
New York, NY 10019-6099

Susan Stryker
Sterns & Weinroth
Trenton, NJ 08607

 Attorneys for Appellees -
Foodtown, Inc., et al.

Anthony X. Arturi, Jr. (Argued)
Alampi, Arturi, D'Argenio, &
 Guaglardi, LLP
Englewood Cliffs, NJ 007632

 Attorney for Appellee -
Martin Vitale

_____

* Honorable Donald C. Pogue, United States Court of International Trade,
sitting by designation.

2

James M. Strauss
Christopher M. Houlihan
Putney, Twombly, Hall &
 Hirson, LLP
New York, NY 10175

 Attorney for Appellees -
Nicholas D'Agostino and
D'Agostino Supermarkets, Inc.

OPINION OF THE COURT

POGUE, Judge, Court of International Trade:

Obligated by two collective bargaining agreements with
Teamsters Local 863 (the "Local"), Twin County Grocers,
Inc. ("Twin"), a wholesale distributor of supermarket and
related products which had become insolvent, incurred
withdrawal liability in the amount of $9.3 million to the
Local's multiemployer pension fund. The Board of Trustees
of the pension fund ("Appellant") sought judgment against
several corporate and individual defendants ("Appellees").1
The Appellant alleges that the Appellees were Twin's alter
ego, that Twin's corporate veil should be pierced to assess
liability on the Appellees, and that the Appellees breached
fiduciary duties and aided and abetted the breach of
fiduciary duties owed to the Appellant. The district court
dismissed the action for lack of standing, based on its
conclusion that the bankruptcy trustee was the only
suitable party to pursue such a proceeding. The Board of
Trustees of the pension fund appeals. We reverse as to the
first three counts.

We have jurisdiction to hear this appeal pursuant to 28

U.S.C. S 1291 and 28 U.S.C. S 158(d). O'Dowd v. Trueger, 233 F.3d 197, 201 (3d Cir. 2000).

---

1. Appellees include the Foodtown Appellees, consisting of Foodtown members, Foodtown directors, and Foodtown, Inc.; Nicholas D'Agostino and D'Agostino Supermarkets, Inc.; and Martin Vitale.

I.

We exercise plenary review over the district court's granting of a Fed. R. Civ. P. 12(b)(6) motion to dismiss for lack of standing and failure to state a claim. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). In reviewing the district court's decision to grant such a motion, we accept as true all allegations in the complaint, giving the Plaintiff the benefit of every favorable inference that can be drawn from the allegations. Id.; U.S. Express Lines, LTD. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II.

Appellant's claim is based on withdrawal liability established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. S 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. SS 1381-1461.2

ERISA was enacted by Congress to protect employees' pension rights. Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co., 513 U.S. 414, 416 (1995). Congress found, however, that ERISA "did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 722 (1984). As a result, several years after the enactment of ERISA, Congress promulgated the MPPAA to foster the growth and continuance of multiemployer pension plans. See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 196 (1997). The MPPAA's primary objective is to insulate these plans in order to protect the retirement benefits of covered employees. In

---

2. There is no claim here involving the assumption or rejection of the collective bargaining agreement pursuant to 11 U.S.C. S 1113.

order to satisfy this goal, the MPPAA requires employers

who withdraw from underfunded multiemployer pension plans to pay a "withdrawal liability." See, e.g., ILGWU Nat'l Retirement Fund v. Minotola Indus., Inc., 1991 U.S. Dist. LEXIS 6147 (S.D.N.Y. 1991)(Withdrawal liability is imposed in order "to ensure that workers' retirement benefits w[ill] actually be available during retirement.").

Complete withdrawal liability, pursuant to 29 U.S.C. S 1383(a), is not incurred until an employer"(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." Therefore, a cause of action under the MPPAA does not ripen until the employer fails to make a payment on the schedule set by the fund. See Bay Area Laundry & Dry Cleaning Pension Trust Fund, 522 U.S. at 200-01. As the Pension Benefit Guaranty Corporation ("PBGC")3 advises, under ERISA, as amended by the MPPAA, the date of withdrawal is the date that operations actually cease -- the date does not relate back to the date of filing of a Chapter 11 petition if operations have continued thereafter. See PBGC Op. Letter No. 87-1 (Jan. 23, 1987).

With regard to alter ego liability in cases involving claims to pension benefits protected by ERISA, as amended by the MPPAA, there is "a federal interest supporting disregard of the corporate form to impose liability." Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 460-61 (7th Cir. 1991)("[T]he congressional intent of ERISA is to hold employers responsible for pension benefits, so that when the corporate form poses a bar to liability, 'concerns for corporate separateness are secondary to what we view as the mandate of ERISA.' ")(internal citations omitted).

_____

3. The PBGC is a corporation within the United States Department of Labor and is the agency charged with interpreting the MPPAA. Although its interpretations are not binding, they require substantial deference. See Cent. States, Southeast & Southwest Areas Pension Fund v. Nitehawk Express, Inc., 223 F.3d 483, 491 (7th Cir. 2000); Penn Cent. Corp. v. Western Conference of Teamsters Pension Trust Fund , 75 F.3d 529, 534 (9th Cir. 1996)(stating that the court is "obligated to defer to the PBGC's interpretation 'even if reasonable minds could differ as to the proper interpretation of the statute' ").

In the instant case, the district court held that the trustee of the bankruptcy estate, rather than Appellant, was the proper party to pursue the present action. 4 That court reasoned that Appellant's alleged injuries were the "property of the bankruptcy estate," Appellant's Br., Ex. B at 6, and would "impact[ ] Twin directly and all of Twin's creditors indirectly." Id. at 9.

Certainly the district court was correct that once a company or individual files for bankruptcy, creditors lack standing to assert claims that are "property of the estate." The Bankruptcy Code defines the "estate" as"all legal or

equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. S 541(a)(1), as well as "[a]ny interest in property that the estate acquires after the commencement of the case." Id. at 541(a)(7). This definition is given broad application and includes "all kinds of property, including . . . causes of action . . . ." United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983).5 Moreover, at least in some circuits, a trustee in bankruptcy may maintain a "veil piercing" suit or alter ego action on behalf of a bankrupt corporation where the claim alleged involves a generalized injury to all creditors. See, e.g., Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1346-47 (7th Cir. 1987).6

_____

4. In this case, Twin filed for Chapter 11 liquidation. In a Chapter 11 case, unless a trustee is appointed, the debtor becomes a "debtor in possession." 11 U.S.C. S 1101(1). As a debtor in possession in its Chapter 11 case, Twin possesses the powers of a trustee. 11 U.S.C. S 1107(a).

5. A cause of action is considered property of the estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law. Butner v. United States, 440 U.S. 48, 54 (1979).

6. The district court cites to, inter alia , Mangan v. Williams Sys. Ltd., 1990 WL 92695 (E.D.N.Y. 1990), an unpublished district court opinion, as directly applicable here. In Mangan, plaintiff pension fund trustees brought an action to recover delinquent contributions and withdrawal liability that were the funding obligations of an insolvent employer. Plaintiffs claimed that the defendants dismantled the employer corporation and diverted its assets in order to evade the employer corporation's obligations to make pension fund contributions and pay

Here, however, Twin's withdrawal liability is not property of the estate. Although Twin filed its bankruptcy petition on December 7, 1998, it did not cease operations until it entered into a Shutdown Agreement on December 25, 1998, and it continued contributions to the pension fund until January 25, 1999. Therefore, the claim for withdrawal liability did not arise until after the filing of the bankruptcy petition.7

The claim for withdrawal liability is also not a legal or equitable interest of the debtor. In order for the claim to be the "legal or equitable interest of the debtor in property," the claim must be a "general one, with no particularized injury arising from it." St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 701 (2d Cir. 1989)("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."). On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a legal or equitable interest only of the creditor. A claim for an injury is

personal to the creditor if other creditors generally have no interest in that claim. Koch Refining, 831 F.2d at 1348-49.8

_____

withdrawal liability. The bankruptcy trustee also sued all but one of the defendants for fraudulent conveyance and breach of fiduciary duty. While allowing the plaintiff 's "control group" claim to proceed to trial, the district court stayed the plaintiffs' alter ego claims, noting that "[i]f the Trustee recovers against these defendants, it may be that plaintiffs' claims will be satisfied." The court explicitly declined to decide whether the plaintiffs' claims were property of the debtor. We do not find the holding of this opinion persuasive contrary authority to our analysis here.

7. There is no claim here that the estate acquired an interest in the fund's claim for withdrawal liability after the commencement of the bankruptcy case pursuant to 11 U.S.C. S 541(a)(7). Cf. O'Dowd v. Trueger, 233 F.3d 197, 203-04 (3d Cir. 2000)(holding that where a cause of action accrued pre-petition, and was also part of the original bankruptcy estate, a subsequent cause of action"traceable directly" to it is also estate property).

8. Thus, if, at the time of Twin's filing, Appellant's cause of action existed and was general, it would be the property of the bankruptcy estate and Appellant would lack standing to pursue the action.

7

In this case, the injury is not insolvency stemming from Appellees' actions. Here, the injury is the Appellees' evasion of withdrawal liability. Withdrawal liability is not owed to Twin; rather, it is owed to the pension fund. Because the liability is owed only to the fund, the claim is personal to the Appellant. Moreover, absent a general creditors' interest, a trustee can only collect money that may be owing to the bankrupt entity. See Steinberg v. Buczynski, 40 F.3d 890, 892 (7th Cir. 1994) ( "If the corporation is injured by the shareholders' disregard of corporate formalities . . . then the trustee can sue; otherwise he cannot."). Here, there is no general creditors' interest in the statutorily imposed withdrawal liability owed to the fund. Rather, the action to recover the withdrawal liability has the character of an action for damages flowing from an alleged illegality against the fund. The alleged illegality may have caused other injuries in addition to those caused to the fund, but the direct injury to the fund -- the evasion of its statutory entitlement -- defines the nature of plaintiffs' claim as a personal one. See Apostolou v. Fisher , 188 B.R. 958, 968 (N.D. Ill. 1995)(holding that when a third-party's actions injure both the individual creditor and the corporation, the individual creditor "may pursue a cause of action against a third-party outside bankruptcy for the direct injuries that the creditor, rather than the corporation, suffered"). As a result, Twin's withdrawal liability is not part of the bankruptcy estate pursuant to section 541(a)(1) or (7). Consequently, the claim here cannot be the property of the estate. See Steinberg, 40 F.3d at 892.

Appellees rely on a New Jersey bankruptcy case, Tsai v.

Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.), 230 B.R. 36 (D.N.J. 1998), to demonstrate that alter ego and veil piercing actions are the property of the bankruptcy estate. Their reliance, however, is misplaced. There, the trustee had standing to pursue an alter ego action on behalf of the corporate debtor to recover on a defaulted loan. Thus, the action was based on a general injury suffered by a corporate debtor prior to its bankruptcy filing. The cause of action in the present action arises from a statutorily imposed withdrawal liability that occurred after the filing of the bankruptcy petition.

Furthermore, the In re Buildings by Jamie court held, consistent with our decision here, that under New Jersey law an alter ego action is an equitable remedy that may only be asserted by a corporation when it suffers harm. Here, Twin did not suffer harm from the Appellees' evasion of withdrawal liability; only the Appellants suffered such harm. See, e.g., Steinberg, 40 F.3d at 892-93 (explaining in a similar case that "the only injured person here is the pension fund"). As a result, the injury is personal to the Appellants and only the creditor, not the bankruptcy trustee, can pursue the claim. See id. ("When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. He has no interest in the suit.").

III.

Appellees also argue that should this court hold that Appellant has standing, the district court's decision to dismiss the amended complaint should still be affirmed on the alternate ground that it fails to state a claim upon which relief can be granted. We find that the Appellant has made the necessary showing for three of the four counts in its complaint.

A. Counts I and II: Disregarding Corporate Formalities

Abuses of the corporate form allow courts to impose liability on the corporation's shareholders. The purpose of alter ego liability and piercing the corporate veil "is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law . . . ." State Dep't of Envtl. Protect. v. Ventron Corp., 94 N.J. 473, 500 (1983)(internal citations omitted).

Piercing the corporate veil is a "tool of equity," Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc. , 727 F.2d 279, 284 (3d Cir. 1983), a "remedy that is involved when [a subservient] corporation is acting as an alter ego of [a dominant corporation.]" Peter J. Lahny IV, Securitization: A Discussion of Traditional Bankruptcy Attacks and an

Analysis of the Next Potential Attack, Substantive Consolidation, 9 Am. Bankr. Inst. L. Rev. 815, 865 (2001). In order to state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law. See Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988); Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1046 (D.N.J. 1990).9 Factors to be considered in determining whether to pierce the corporate veil include

> gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'

Craig, 843 F.2d at 150 (quoting American Bell, Inc. v. Federation of Telephone Workers, 736 F.2d 879, 886 (3d Cir. 1984)).

Appellant alleges that defendants failed to maintain formal barriers between the management structures of

_____

9. Foodtown argues that Appellant must prove that the defendants are a "parent" of Twin, which they have failed to do. "Parent" corporations, however, are not the only parties liable under a veil piercing theory. Shareholders have also been found liable when they have totally dominated the corporation, failed to maintain the corporate identity, and used the corporation to perpetrate fraud, injustice or some other illegality. See, e.g., Conestoga Title Ins. Co. v. Premier Title Agency, Inc., 328 N.J. Super. 460, aff 'd, 166 N.J. 2 (2000); In re Buildings by Jamie, Inc., 230 B.R. at 42 ("[W]hile in most cases courts have been willing to pierce the corporate veil in the parent-subsidiary context, given the ease with which the individual owners here altered their organizations and closely held assets, there appears to be no reason to limit the application of the rule to parent-subsidiary relationships.")(quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989).

Foodtown and Twin; failed to maintain formal barriers between Foodtown and Twin for purposes of legal representation; commingled funds and other assets; and failed to observe other corporate formalities. Am. Compl. PP 79(a),(b),(c),(e). Furthermore, Appellant contends that Foodtown and Twin shared twelve of thirteen common directors and that at all times Twin's Board of Directors

was dominated and controlled by the Foodtown-affiliated Directors. Id. PP 69, 70. Appellant also claims that all of Foodtown's shareholder/members were also members of Twin and that all the corporate defendants were common shareholder/members of Foodtown and Twin. Id. P 71. Appellant also claims that Foodtown and Twin shared the same principal office and registered office. Id. PP 72, 73. These allegations, accepted as true in consideration of a 12(b)(6) motion, support the first prong of the veil piercing test -- that Twin was merely an instrumentality of Foodtown.

Appellant, however, must also allege that Foodtown used Twin to perpetrate fraud, to accomplish injustice, or to circumvent the law.10 Here, Appellant alleges, in

_____

10. Foodtown argues that the Appellant's allegations do not meet the heightened pleading requirements for fraud. Foodtown's Br. at 54. When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b). Coyer v. Hemmer, 901 F. Supp. 872, 883-84 (D.N.J. 1995). The purpose of Rule 9(b) "is [to] provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." In re Burlington Coat Factory Sec. Litig.,114 F.3d 1410, 1418 (3d Cir. 1997). In order to put defendants on notice Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." For example, the requirements of rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with "precise allegations of date, time, or place" or by using some means of "injecting precision and some measure of substantiation into their allegations of fraud." Naporano Iron & Metal Co. v. Amer. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999)(internal citations omitted); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Although the complaint does not contain specifics concerning the date, time or place of the allegations, the complaint does plead the allegations with some particularity.

11

subparagraph 79(d), that the Appellees diverted monies destined for withdrawal liability. Appellant's enumeration of Appellees' actions, consisting of diverting funds, fictitious invoices and kickbacks, "inject[s] precision and some measure of substantiation into their allegations of fraud," consistent with Rule 9(b). See Naporano Iron & Metal, 79 F. Supp. 2d at 511. When viewed in the light most favorable to the Appellant, these allegations can support a claim that Appellees used Twin "to perpetrate fraud, to accomplish injustice, or to circumvent the law." Major League Baseball, 729 F. Supp. at 1046.

B. Count III: Fiduciary Duties

The third count of Appellant's complaint alleges that "[t]he individual officers and directors of Twin and Foodtown are fiduciaries with respect to Union Employees who were Plan participants represented by Plaintiff." Am.

Compl. P 85. Appellees argue that they are not fiduciaries under ERISA. The district court, however, stated that Appellant's fiduciary duty claims "were being brought under state and common law and not under ERISA." Appellant's Br., Ex. B, at 4 & n.2 ("The Fund's theory of liability is not based on Defendants' status as 'fiduciaries' per se under ERISA but as fiduciaries to the Fund as a creditor of Twin, an insolvent corporation.")(quoting Pl.'s Br. at 36).

Generally, corporate directors owe a fiduciary duty only to the corporation's shareholders. "This duty includes an obligation not to take action which would be adverse to the Corporation's interests." Ayr Composition, Inc. v. Rosenburg, 261 N.J. Super. 495, 501 (App. Div. 1993)(internal quotations omitted). Once a corporation becomes insolvent, however, the directors assume a fiduciary or "quasi-trust" duty to the corporation's creditors. See id. at 505. In this quasi-trust relationship, "officers and directors cannot prefer one creditor over another, and they have a 'special duty not to prefer themselves.' " In re Stevens, 476 F. Supp. 147, 153 n.5 (D.N.J. 1979). Based on the allegations here, the trial court could find that the individual officers and directors of Twin and Foodtown breached their duties under their quasi-trust relationship by "withholding and diverting for their own benefit the monies that should have been used to make . . . contributions." Am. Comp.P 85.

12

C. Count IV: Aiding and Abetting Fiduciary Duties

In the fourth count of its complaint, Appellant claimed that "[a]s an 'employer' under ERISA, Twin, Foodtown and Defendant Control Group members are fiduciaries with respect to Union Employees who were Plan participants represented by Plaintiff." Id. P 88.11 Appellant contends that "Defendants jointly and severally aided and abetted the breach of fiduciary duties owed to Plan participants by Twin, Foodtown and the Defendant Control Group members, by knowingly and willfully participating in those entities' breach of their fiduciary duties under ERISA." Id. P 89. Although the district court characterized Appellant's fiduciary duty claim in count III of the complaint as a "common law claim," it is not possible to understand Appellant's claim of aiding and abetting fiduciary duties in this manner.

In this count, Appellant's claim is that Twin and Foodtown breached fiduciary duties owed under ERISA. In order to acquire fiduciary status under ERISA, the party must (1) be named as a fiduciary in the instrument establishing the plan; (2) named as a fiduciary pursuant to a procedure specified in a plan instrument; or (3) fall within the statutory definition of fiduciary. Glaziers & Glassworkers v. Newbridge Sec., 93 F.3d 1171, 1179 (3d Cir. 1996). Section 1002(21)(A) provides that

a person is a fiduciary with respect to a [pension] plan to the extent (i) he exercises any discretionary

authority or discretionary control respecting
management of such plan or exercises any authority or
control respecting management or disposition of its
assets, (ii) he renders investment advice for a fee or
other compensation, direct or indirect, with respect to
any monies or other property of such plan, or has any

---

11. We do not consider Appellant's claim that the"Defendant Control Group" is liable for aiding and abetting a breach of fiduciary duty. This is the only mention of a "control group" theory and Appellant presents no arguments in its brief on this matter. Furthermore, in the district court opinion, the Judge noted that in a status conference before Magistrate Judge Chesler, the fund agreed to omit its controlled-group claim from the Amended Complaint. See Appellant's Br., Ex. B at 3 n.1.

13

authority or responsibility to do so, or (iii) he has any
discretionary authority or discretionary responsibility
in the administration of the plan . . . .

29 U.S.C. S 1002(21)(A). In order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach. See Resolution Trust Corp. v. Spagnoli, 811 F. Supp. 1005, 1014 (D.N.J. 1993).

Here, the only fiduciary named in the collective bargaining agreements is the Appellant. There are no allegations that Twin or Foodtown had a role in the management and investment of the Fund's assets. Moreover, Twin and Foodtown are not automatically fiduciaries pursuant to ERISA, as amended by the MPPAA, even if they are "employers." See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir. 1990)("Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions. Thus, when employers themselves serve as plan administrators they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators.")(internal quotations omitted). Appellant argues that Appellees "knowingly and willfully participat[ed] in [Twin and Foodtown's] breach of their fiduciary duties under ERISA," but Appellant has not alleged any basis upon which Twin and Foodtown owe fiduciary duties under ERISA. Therefore, this count must be dismissed for failure to state a claim.

IV.

Prior to instituting an action for withdrawal liability, ERISA requires written notice to the withdrawing party of the amount of withdrawal liability claimed and a demand for payment. 29 U.S.C. S 1399(b)(1). Appellee Vitale argues that Appellant failed to notify him that it would pursue an action against Vitale seeking Twin's withdrawal liability.

Vitale claims that because this notice requirement is an

unwaivable precondition for instituting an action, the complaint should be dismissed.12

Although the notice requirement cannot be waived, in this case the notice sent to Twin provided sufficient notice to Twin's alter egos and satisfies 29 U.S.C.S 1399(b)(1). Due to the remedial purpose of ERISA and the MPPAA, the MPPAA's notice provisions are liberally construed to protect pension plan participants. IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir. 1986). For purposes of this issue, the present situation is analogous to a control group, in which all members of the control group are treated as a single employer. Like a control group, a corporation and its alter ego are essentially a single employer because in all aspects of business the two function as a single entity. It is unnecessary to notify a corporation's alter ego because notice is accomplished through the alter ego relationship. Therefore, notice to Twin served as notice to its alter egos.

V.

Foodtown also argues that Twin "unconditionally released all the estate's claims against the Foodtown Appellees." Foodtown Br. at 60. In a consent order approving Twin's settlement with Foodtown and various other corporate defendants, a general release provided, in pertinent part, that "[r]eleasors hereby remise, release and forever discharge by these presents . . . and do hereby remise, release and forever discharge [the Foodtown Appellees] . . . from any and all manners of action . . . , causes of action, suits, debts, sums of money . . . now known or unknown, or hereafter becoming known, from the beginning of the world until the date of this General Release." Consent Order Approving Settlements with Foodtown, Heller and Lloyd's, Dismissal of Lawsuit and Entry into Mutual Releases,

---

12. In support of his argument, Vitale cites to Connors v. Peles, 724 F. Supp. 1538 (W.D. Pa. 1989) and Canario v. Lidelco, Inc., 782 F. Supp. 749 (E.D.N.Y. 1992). In both cases, the courts first determined that the defendants were not the alter egos of the corporation, and then discussed the notice issue in dicta.

Supp. App. II, SA 358. Foodtown claims that this release bars the present action.

Appellant argues that the settlement agreement "expressly stated that the [release given by the Debtor to the Foodtown Appellees] . . . shall not be deemed to be a release of the Fund's claim" in this action. Appellant's Br. at 3, 9. According to Foodtown, however, the inclusion of

this provision demonstrates that Twin "generally released the Foodtown Appellees only after due notice to the Appellant, and that Appellant made a deliberate decision to waive its right to object." Foodtown Br. at 27.

Whether the release precludes the present lawsuit depends on the characterization of the underlying claim. Because Appellant's cause of action is based on withdrawal liability under ERISA and is not considered property of the estate, Twin's release does not affect Appellant's claims. Even Foodtown acknowledges that its argument that Appellant lacks standing is based on a theory of "property of the estate." Id. at 26 (arguing that "Appellant lacked standing . . . because such claims, as property of the Debtor's estate, could only be brought by the Debtor"). Therefore, Twin's general release does not bar the present action.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit