**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1467
_____

In re:  EMORAL, INC.,
                              Debtor

DIACETYL PLAINTIFFS,
                              Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-12-cv-07085)
District Judge:  Honorable Stanley R. Chesler
_____

Argued:  October 10, 2013
_____

Before: FUENTES, COWEN and BARRY, *Circuit Judges*

(Opinion Filed: January 24, 2014)
_____

Nancy Isaacson, Esq. (*Argued*)
Greenbaum, Rowe, Smith & Davis
75 Livingston Avenue
Suite 301
Roseland, NJ 07068

Kenneth B. McClain, Esq.
Humphrey, Farrington & McClain
221 West Lexington
P.O. Box 900, Suite 400
Independence, MO 64051-0000

*Counsel for Appellants*

Christopher Landau, Esq. (*Argued*)
Liam P. Hardy, Esq.
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC 20005

Paul Basta, Esq.
Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022

*Counsel for Appellee*

———————

OPINION OF THE COURT
———————

BARRY, *Circuit Judge*

This appeal requires us to determine whether personal injury causes of action arising from the alleged wrongful conduct of a debtor corporation, asserted against a third-party non-debtor corporation on a "mere continuation" theory of successor liability under state law, are properly characterized as "generalized claims" constituting property of the bankruptcy estate. We conclude that they are, and will, therefore, affirm the order of the District Court.

I.

In August of 2010, Aaroma Holdings LLC ("Aaroma"), f/k/a Duane Street, LLC, purchased certain assets and assumed certain liabilities of Emoral, Inc. ("Emoral"), f/k/a Polarome International, Inc., a manufacturer of diacetyl, a chemical used in the food flavoring industry. At the time of the transaction, the parties were aware of potential claims against Emoral arising from exposure to diacetyl, although those individuals who came to be known in this litigation as the "Diacetyl Claimants" or the "Diacetyl Plaintiffs" (herein, "Diacetyl Plaintiffs") apparently had never

2

themselves been employed by Emoral. The Asset Purchase Agreement specifically provided that Aaroma was not assuming Emoral's liabilities related to "the Diacetyl Litigation," and that it was not purchasing Emoral's corresponding insurance coverage. (App. at 326-27.)

When Emoral filed for bankruptcy protection in June of 2011, disputes arose between the bankruptcy trustee (the "Trustee") and Aaroma, including, for example, the Trustee's claim that Emoral's sale of assets to Aaroma constituted a fraudulent transfer. On September 21, 2011, the Trustee and Aaroma entered into a Settlement Agreement (the "Agreement") resolving the claims. As part of the Agreement, Aaroma agreed to pay $500,000 and take certain specific actions, and the Trustee agreed to release Aaroma from any "causes of action . . . that are property of the Debtor's Estate" as of the date of the Agreement. (Id. at 1079-80.)

At a hearing before the Bankruptcy Court regarding approval of the settlement, the Diacetyl Plaintiffs objected to the releases contained in the Agreement to the extent that those releases might bar them from bringing claims against Aaroma, as a successor to Emoral, for personal injuries related to diacetyl. A representative for the Trustee stated its view that the Diacetyl Plaintiffs' successor liability claims against Aaroma "do[] not belong to the Estate" and that the Trustee, therefore, "can't release [them]."[1] (Id. at 1277.) Counsel for Aaroma argued, however, that whether or not the Diacetyl Plaintiffs' causes of action were property of the estate (and therefore covered by the release) was not an issue before the Bankruptcy Court at that time. (Id. at 1280-81.) Ultimately, the parties added the following language to the order approving the settlement to address concerns expressed by the Diacetyl Plaintiffs: "Nothing contained in this Order or in the Aaroma Settlement Agreement will operate as a

---

[1] The Trustee's representative stated: "I would like to sell someone the Brooklyn Bridge, but I don't own it so I can't sell it. I cannot, the Trustee cannot release claims that he doesn't own. It was never contemplated that he would be releasing claims he doesn't own." (Id. at 1278.)

3

release of, or a bar to prosecution of any claims held by any person which do not constitute Estate's Released Claims as defined in the Aaroma Settlement Agreement." (Id. at 1206, 1355.) By order of October 7, 2011, the Bankruptcy Court approved the settlement. The ultimate question, however, of whether the Diacetyl Plaintiffs' causes of action constituted "Estate's Released Claims," as defined in the Agreement, was not resolved.

The Diacetyl Plaintiffs filed individual complaints against Aaroma in the Superior Court of New Jersey (see, e.g., id. at 1227-45) alleging personal injury and product liability claims and asserting that Aaroma was a "mere continuation" of Emoral and, therefore, liable. (Id. at 1233.) In April 2012, Aaroma filed in the Bankruptcy Court a "Motion to Enforce Court Order Approving Settlement with Bankruptcy Trustee and Compelling Dismissal of State Court Actions," arguing that the Diacetyl Plaintiffs' claims were barred by the Agreement's language as to release. The Diacetyl Plaintiffs opposed the motion, arguing that it was the understanding of the parties that their claims were not released under the Agreement. (Id. at 1324-26.) They cited, for example, the statement made on behalf of the Trustee during the hearing before the Bankruptcy Court prior to the approval of the settlement that their claims "do[] not belong to the Estate" and that the Trustee, therefore, "can't release [them]." (Id.) In the motion to enforce the order approving the settlement, however, the Trustee did not take a position, stating that it was an issue of law for the Bankruptcy Court to determine. (Id. at 1341.)

Following oral argument, the Bankruptcy Court, in a lengthy opinion, denied Aaroma's motion, holding that the Diacetyl Plaintiffs' personal injury causes of action were not property of the estate because the Diacetyl Plaintiffs alleged "a particular injury not generalized injury suffered by all shareholders or creditors of Emoral." (Id. at 1387.) The Bankruptcy Court stated that "While successor liability has been imposed derivatively, this Court finds that the underlying injury that is alleged to be the basis and premise of the state court actions is personal harm . . . to the individual plaintiffs" and that "Emoral has not suffered any personal

4

harm nor have the creditors as a general whole."  (Id.)

Aaroma appealed to the District Court, and the District Court reversed, emphasizing that the Diacetyl Plaintiffs had no cause of action against Aaroma (which, it was not disputed, neither manufactured nor sold diacetyl) except on a successor liability theory.  (Id. at 7-8.)  The District Court held that the cause of action for successor liability was a "generalized" claim belonging to the estate because the facts giving rise to the cause of action were not specific to the Diacetyl Plaintiffs but common to all creditors, and because, if the Diacetyl Plaintiffs were to succeed in establishing that Aaroma constituted a "mere continuation" of Emoral, this would benefit the creditors of Emoral generally.  (Id. at 7-9.) It stated:

> [T]he potential liability of Aaroma to the Diacetyl Plaintiffs does not arise out of the alleged misfeasance of Aaroma as to these creditors individually but rather out of its alleged continuation of the general business operation of the actual alleged wrongdoer, Emoral.  Put slightly differently, for purposes of determining whether the cause of action belongs to the Estate, the critical distinction between the personal injury claim against Emoral and the successor liability claim against Aaroma is that establishing the former would benefit only the allegedly injured Diacetyl Plaintiffs whereas establishing the latter  -- that Aaroma is the "mere continuation" of Emoral and thus should be charged with all its liabilities – would benefit creditors of Emoral generally.

(Id. at 8-9.)   Accordingly, the District Court reversed and remanded to the Bankruptcy Court for entry of an order consistent with the District Court's opinion.  The Diacetyl Plaintiffs now appeal, arguing that they have standing to assert their personal injury causes of action against Aaroma, and that the District Court erred in conflating these claims with their successor liability theory.

5

II.

We have jurisdiction to review the order of the District Court pursuant to 28 U.S.C. §§ 158(d) and 1291. The District Court had jurisdiction to review the Bankruptcy Court's decision pursuant to 28 U.S.C. § 158(a). We "exercise the same standard of review as the District Court when it reviewed the original appeal from the Bankruptcy Court," and, thus, review the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise plenary review over legal issues. In re Rodriguez, 629 F.3d 136, 138 (3d Cir. 2010) (quoting In re Handel, 570 F.3d 140, 141 (3d Cir. 2009)).

III.

The basic legal framework applicable to this case is not in dispute. After a company files for bankruptcy, "creditors lack standing to assert claims that are 'property of the estate.'" Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002). The "estate," as defined in the Bankruptcy Code, includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes causes of action, which are considered property of the bankruptcy estate "if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law." Foodtown, 296 F.3d at 169 n.5. In order for a cause of action to be considered "property of the estate,"

> the claim must be a "general one, with no particularized injury arising from it." On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.

Id. at 170 (citing St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989) and Koch Refining v.

6

Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1348-49 (7th Cir. 1987)).

A cause of action that is "property of the estate" is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors. This promotes the orderly distribution of assets in bankruptcy, and comports with "the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim." Koch Refining, 831 F.2d at 1344. As the Second Circuit has held, when examining "common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion," where a claim is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." St. Paul Fire & Marine Ins. Co., 884 F.2d at 701.

To determine whether the Diacetyl Plaintiffs' cause of action against Aaroma constitutes property of Emoral's bankruptcy estate, we must examine the nature of the cause of action itself. While the Diacetyl Plaintiffs focus on the individualized nature of their personal injury claims against Emoral, we cannot ignore the fact, and fact it be, that their only theory of liability as against Aaroma, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a "mere continuation" of Emoral such that it has also succeeded to all of Emoral's liabilities.

The parties do not dispute that under both New Jersey and New York state law,[2] an acquiring company is generally "not liable for the debts and liabilities of the selling company simply because it has succeeded to ownership of the assets of the seller," except in limited circumstances. Lefever v. K.P. Hovnanian Enters., Inc., 160 N.J. 307, 310 (N.J. 1999). One

_____

[2] There is no dispute that either New Jersey or New York law applies and that the two states' relevant applicable legal standards are identical, rendering a choice-of-law analysis unnecessary.

7

exception to the general rule against successor liability is where the purchasing company "is a mere continuation of the seller." Id. To establish liability based on a "mere continuation" theory, as the Diacetyl Plaintiffs seek to do against Aaroma, a plaintiff must "establish that there is continuity in management, shareholders, personnel, physical location, assets and general business operation between selling and purchasing corporations following the asset acquisition." Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 342 (N.J. 1981).

The Diacetyl Plaintiffs fail to demonstrate how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors of Emoral. Likewise, they fail to demonstrate how recovery on their successor liability cause of action would not benefit all creditors of Emoral given that Aaroma, as a mere continuation of Emoral, would succeed to all of Emoral's liabilities. Thus, the Diacetyl Plaintiffs' cause of action against Aaroma is "general" rather than "individualized." See Foodtown, 296 F.3d at 169-70.

Although we have not before squarely addressed this issue, other courts applying New York and New Jersey law have held that state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate. In In re Keene Corp., 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994), for example, plaintiffs alleged that they had claims for asbestos-related injuries against Keene, the debtor corporation, and brought various lawsuits against certain third-party non-debtor defendants, alleging that Keene wrongfully transferred assets to those defendants which prevented plaintiffs from collecting damages from Keene. 164 B.R. at 848. Invoking successor liability, plaintiffs argued that by acquiring the assets of Keene, defendants also assumed the asbestos-related liabilities. The court, applying New York law with respect to successor liability, held that plaintiffs' causes of action constituted property of the estate:

> [T]he remedy against a successor corporation
> for the tort liability of the predecessor is, like

8

the piercing remedy, an equitable means of expanding the assets available to satisfy creditor claims. The class action plaintiffs that invoke it allege a general injury, their standing depends on their status as creditors of Keene, and their success would have the effect of increasing the assets available for distribution to all creditors.

Id. at 853. Accordingly, the court held that the successor liability causes of action should be asserted by the trustee on behalf of all creditors.

Likewise, in In re Buildings by Jamie, Inc., 230 B.R.36, 43 (Bankr. D.N.J. 1998), the court, applying New Jersey law, concluded that a debtor's individual creditors lacked standing to bring an alter ego veil-piercing cause of action seeking recovery from non-debtor third-party defendants, because that cause of action constituted property of the bankruptcy estate. It held that because New Jersey law permits a corporation to pierce its own veil and because recovery on the alter ego claim would benefit the estate as a whole,[3] the cause of action was "properly characterized as a general claim as to which the trustee alone has standing as representative of the estate." 230 B.R. at 44. The court discussed our holding in Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1240 n.20 (3d Cir. 1994), in which we observed that it "may seem strange" to allow a corporation to pierce its own veil, "since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor." Id. However, we recognized that, in New Jersey and in other states, "piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors." Id. Thus, because a veil-piercing cause of action is "based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrine[] to allow a debtor corporation to

---

[3] In Buildings by Jamie, there was no question that recovery on the alter ego claim "would necessarily inure to the benefit of all creditors," because the plaintiff creditors constituted the entire body of creditors. 230 B.R. at 44.

pursue a claim based upon such a theory." Id.

As we observed in Phar-Mor, so, too, here it "may seem strange" to hold that a cause of action for successor liability against Aaroma is property of Emoral's bankruptcy estate. As a practical matter, it is difficult to imagine a factual scenario in which a solvent Emoral, outside of the bankruptcy context, would or could bring a claim for successor liability against Aaroma. See Buildings by Jamie, 230 B.R. at 42 (similarly acknowledging in the veil-piercing context that "from a practical standpoint, principals of a solvent debtor will not be compelled to pierce the veil of the very entity they use as a conduit for their personal business," as this would "effectively extinguish their limited liability and expose them to the personal liability that the corporate form is employed to avoid").

Just as the purpose behind piercing the corporate veil, however, the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim. See Phar-Mor, Inc., 22 F.3d 1240 n.20; see also Baker v. Nat'l State Bank, 161 N.J. 220, 227-28 (N.J. 1999) (discussing successor liability and holding that it requires a "fact specific and equitable analysis"); Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 284 (N.J. App. Div. 1993) (holding that "the doctrine of successor liability exists to protect against [] inequities"). As in Keene Corp. and Buildings by Jamie, the Diacetyl Plaintiffs' cause of action against Aaroma would be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors. Therefore, the District Court appropriately classified that cause of action as a generalized claim constituting property of the estate. See also In re OODC, LLC, 321 B.R. 128, 136 (Bankr. D. Del. 2005) (holding that the bankruptcy trustee had standing to pursue successor liability claims because the claims were general and common to all creditors, noting that "most other courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors").

The Diacetyl Plaintiffs concede that there is no relevant caselaw directly supporting their position that individual personal injury claims asserted on a successor liability theory should not be considered property of the bankruptcy estate. They attempt to distinguish Keene Corp. and related caselaw, however, by drawing a distinction between, on one hand, a successor liability claim as a primary cause of action, and, on the other hand, successor liability as an equitable remedy to satisfy an individual damage claim. We are not aware of any applicable legal authority drawing such a distinction and, indeed, we note that any cause of action asserting successor liability necessarily contemplates some underlying damage or liability for which the claimant is seeking recourse from a third party.

The Diacetyl Plaintiffs also argue that Foodtown supports their position because we held in that case that a pension fund's claim against third party affiliates of a debtor employer did not constitute property of the debtor's bankruptcy estate. See 296 F.3d at 170. Their reliance on Foodtown is misplaced. In Foodtown, a plaintiff pension fund sought to recover $9.3 million in ERISA withdrawal liability owed by the debtor to the pension fund by bringing an alter ego veil-piercing claim and claims for breach of fiduciary duty against third parties. The cause of action at issue, however, did not constitute a general claim for successor liability based on a mere continuation theory, but instead a specific claim for liability pursuant to ERISA. We observed in Foodtown that "[w]ith regard to *alter ego* liability in cases involving claims to pension benefits protected by ERISA . . . there is a federal interest supporting disregard of the corporate form to impose liability." Id. at 169 (citation and internal quotation marks omitted). Moreover, crucial to our holding in Foodtown was the fact that the cause of action did not arise until after the debtor's bankruptcy filing, and thus could not be considered property of the estate. We distinguished the cause of action in Buildings by Jamie, which "was based on a general injury suffered by a corporate debtor prior to its bankruptcy filing" from the cause of action in Foodtown, which "ar[ose] from a statutorily imposed withdrawal liability that occurred after the filing of the bankruptcy petition." Id. at 171. The Diacetyl Plaintiffs'

11

cause of action is distinguishable from the claim in <u>Foodtown</u> for the same reason.

IV.

Because the Diacetyl Plaintiffs' cause of action for successor liability against Aaroma belongs to the bankruptcy estate, it falls within the "Estate's Released Claims" within the meaning of the Agreement between the Trustee and Aaroma. The District Court, therefore, properly reversed the Bankruptcy Court's denial of Aaroma's motion to enforce the order approving the settlement, and we will affirm the order of the District Court. We recognize that, in so doing, we leave the Diacetyl Plaintiffs, who allege that they have suffered serious personal injuries resulting from exposure to a harmful chemical, albeit not at the hands of Aaroma, with no apparent recourse against Aaroma. We note, however, that our holding has no bearing on any remedy the Diacetyl Plaintiffs may be seeking directly against Emoral in the bankruptcy proceeding or against any of the numerous other defendants the Diacetyl Plaintiffs have named in the actions pending in the Superior Court of New Jersey.

COWEN, Circuit Judge, *dissenting*

I agree with the Bankruptcy Court that the Diacetyl Plaintiffs' claims against Aaroma constitute "individualized claims" belonging to the Diacetyl Plaintiffs themselves. Because the majority instead concludes that such claims are "generalized claims" belonging to the bankruptcy estate, I must respectfully dissent.

It is undisputed that "creditors lack standing to assert claims that are 'property of the estate.'" Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002). A cause of action or claim, in order to be considered property of the estate, "must be a 'general one, with no particularized injury arising from it." Id. at 170 (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989)). "[W]here a claim 'is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.'" (Majority Opinion at 8 (quoting St. Paul, 884 F.2d at 701); see also id. at 7-8 (quoting Foodtown, 296 F.3d at 170).) "On the other hand, if the claim is specific to the creditor, it is a 'personal' one and is a legal or equitable interest only of the creditor." Id.

Because the Diacetyl Plaintiffs' claims against Aaroma "could [not] be brought by any creditor of the debtor," they constitute individualized claims belonging to the Diacetyl Plaintiffs themselves—and not to the debtor or the bankruptcy estate. Initially, it is uncontested that the underlying personal injury claims against Emoral are

1

individualized in nature. In fact, personal injury and product liability causes of action under state law represent quintessential examples of an individualized claim, i.e., "a 'personal' [claim that is] a legal or equitable interest only of the creditor." Id. The majority insists that "we cannot ignore the fact . . . that [the Diacetyl Plaintiffs'] only theory of liability as against Aaroma, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a 'mere continuation' of Emoral such that it has also succeeded to all of Emoral's liabilities." (Id. at 8-9 (emphasis omitted).) Nevertheless, the Court also cannot ignore the claims or allegations underlying this theory or remedy of successor liability. As the Bankruptcy Court explained in its thorough and well-reasoned ruling, "the underlying injury that is alleged to be the basis and premise of the state court actions is personal harm by exposure to Diacetyl by the individual plaintiffs or harm to the individual plaintiffs." (A1387.) The successor liability theory alleged by the Diacetyl Plaintiffs is inextricably tied to—and cannot be considered separate or apart from—their underlying personal injury and product liability allegations. Because the Diacetyl Plaintiffs' underlying allegations are clearly individualized in nature, their claims against Aaroma—which seek to hold this third party liable for their alleged injuries as the "mere continuation" of Emoral—must also be considered as individualized claims. In short, "any creditor of the debtor" could not allege that the third party should be held responsible on this specific theory of successor liability for injuries allegedly suffered as a result of exposure to a product

2

made and sold by the debtor itself. For instance, a trade creditor of the debtor could not make such a claim.

I believe that the prior case law, beginning with our own ruling in Foodtown, weighs in favor of this approach to the Diacetyl Plaintiffs' claims.

"In Foodtown, a plaintiff pension fund sought to recover $9.3 million in ERISA withdrawal liability owed by the debtor [Twin] to the pension fund by bringing an alter ego veil-piercing claim and claims for breach of fiduciary duty against third parties." (Majority Opinion at 13.) This Court determined that "Twin's withdrawal liability is not property of the estate" because "the claim did not arise until after the filing of the bankruptcy petition." Foodtown, 296 F.3d at 170 (footnote omitted). We, however, did not stop there. On the contrary, we went on to conclude that "[t]he claim for withdrawal liability is also not a legal or equitable interest of the debtor." Id.; cf., e.g., Philadelphia Marine Trade Ass'n— Int'l Longshoremen's Ass'n Pension Fund v. Comm'r of Internal Revenue, 523 F.3d 140, 147 n.5 (3d Cir. 2008) ("We note that this portion of the opinion is an alternative holding, not a *dictum*: 'Where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.'" (quoting Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949))). In doing so, the Foodtown Court specifically focused on the creditor's underlying withdrawal liability allegations, referring, for example, to "Twin's withdrawal liability" and "Appellees' evasion of withdrawal liability." Foodtown, 296 F.3d at 170. The alleged evasion

3

of liability, in turn, did not injure either Twin or the creditors in general:

> In this case, the injury is not insolvency stemming from Appellees' actions. Here, the injury is the Appellees' evasion of withdrawal liability. Withdrawal liability is not owed to Twin; rather, it is owed to the pension fund. Because the liability is owed only to the fund, the claim is personal to the Appellant. Moreover, absent a general creditors' interest, a trustee can only collect money that may be owing to the bankrupt entity. Here, there is no general creditors' interest in the statutorily imposed withdrawal liability owed to the fund. Rather, the action to recover the withdrawal liability has the character of an action for damages flowing from an alleged illegality against the fund. The alleged illegality may have caused other injuries in addition to those caused to the fund, but the direct injury to the fund—the evasion of its statutory entitlement— defines the nature of plaintiff's claim as a personal one. . . .

Id. (citing Steinberg v. Buczynski, 40 F.3d 890, 892 (7th Cir. 1994); Apostolou v. Fisher, 188 B.R. 958, 968 (N.D. Ill. 1995)). In fact, we did not specifically address the elements of the pension fund's alter ego and veil piercing causes of action until we considered the claims on their merits, after concluding that this creditor had standing to pursue such

4

claims in the first place. See id. at 167-73. Likewise, even though our opinion in Foodtown referred to a federal interest in disregarding the corporate form in ERISA and MPPAA cases, id. at 169, we actually applied New Jersey law to conclude that the creditor stated claims for alter ego liability and for piercing the corporate veil, id. at 171-73.

We thereby adopted in Foodtown an expansive approach to the question of whether a creditor's cause of action against a third party constitutes an individualized claim and, at the very least, exhibited a preference for allowing a third party claim to be decided on the merits. As a practical matter, I do not see how the same court that was willing to permit the pension fund's third party claims to go forward could reach the opposite result with respect to the Diacetyl Plaintiffs' own third party claims against Aaroma. Just as we relied on the individualized nature of the underlying withdrawal liability allegations to permit a creditor to pursue its claims against several third parties, we likewise should allow the Diacetyl Plaintiffs' claims against Aaroma to go forward given the individualized nature of their own underlying personal injury and product liability allegations.

The Court in Foodtown turned for support to the Seventh Circuit's opinion in Steinberg, which addressed what we called "a similar case." Id. at 171. The Steinberg court determined that a bankruptcy trustee lacked standing to pursue an adversary proceeding against the debtor's shareholders "seeking to pierce the corporate veil and hold them personally liable for the corporation's debt to the pension fund," where the pension fund had already obtained a

5

monetary judgment against the debtor corporation prior to bankruptcy. Steinberg, 40 F.3d at 891. Like Foodtown, the Seventh Circuit's opinion distinguished between the claims of the debtor corporation and the claims belonging to its creditor pension fund:

> The point is simply that the trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation. But there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct—not derivative—claim against the third party, which only the creditor himself can enforce. . . .

Id. at 893. A trustee has standing to pursue an action to pierce the corporate veil on behalf of the bankrupt corporation only if the corporation was injured by the shareholders' disregard of corporate formalities. Id. at 892; see also, e.g., Foodtown, 296 F.3d at 170-71 (citing Steinberg). I do not see how Aaroma's alleged "mere continuation" of Emoral could have harmed Emoral itself. To paraphrase Foodtown, "the injury [alleged by the Diacetyl Plaintiffs] is not insolvency stemming from [Aaroma's] actions." Foodtown, 296 F.3d at 170.

6

The Second Circuit recently considered the question of standing in In re Bernard L. Madoff Investment Securities LLC, 721 F.3d 54 (2d Cir. 2013), petition for cert. filed, 82 U.S.L.W. 3264 (U.S. Oct. 9, 2013).  A trustee appointed under the Securities Investor Protection Act sought to bring claims on behalf of the victims of a multi-billion-dollar Ponzi scheme against several financial institutions for their alleged role in this fraudulent scheme.  Madoff, 721 F.3d at 57-58. The trustee focused on "a passage in St. Paul—stating that a trustee may bring a claim if the 'claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor'"—and asserted that "the third-party claims here are common to all customers because all customers were similarly injured by Madoff's fraud and the Defendants' facilitation." Id. at 70 (quoting St. Paul, 884 F.2d at 701).  The Second Circuit nevertheless determined that the trustee's theory "is flawed on many levels." Id.  Relying, inter alia, on the Seventh Circuit's reasoning in Steinberg, the Madoff court thereby rejected the trustee's "broad reading" of St. Paul. Id. at 70-71.  "As illustrated by St. Paul, when a creditor seeks relief against third parties that pushed the debtor into bankruptcy, the creditor is asserting a derivative claim that arises from harm done to the estate" and that accordingly belongs to the bankruptcy estate. Id. at 70.  In addition, the Madoff trustee "seeks to assert claims on behalf of thousands of customers against third-party financial institutions for their handling of individual investments made on various dates in varying amounts," id. at 71.  Because these alleged wrongful acts could not have harmed all of the customers in the same way,

7

the claims could not be considered to be "common" or "general" in nature.[1]  Id.

―――――――――――

[1]  The majority turns for support to two bankruptcy court decisions that "have held that state law causes of action for successor liability, just as alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate."  (Majority Opinion at 10.)  However, I believe that both opinions—which clearly are not binding on this Court—are distinguishable on a number of different grounds.  Unlike our ruling in Foodtown, neither Buildings by Jamie nor Keene really looked to the underlying injury or injuries alleged by the creditors.  In turn, Buildings by Jamie did not involve either personal injury or product liability claims.  The Foodtown Court distinguished this New Jersey bankruptcy case because, among other things, "the trustee [in Buildings by Jamie] had standing to pursue an *alter ego* action on behalf of the corporate debtor to recover on a defaulted loan."  Foodtown, 296 F.3d at 171.  "Furthermore, the In re Buildings by Jamie court held, consistent with our decision here, that under New Jersey law an *alter ego* action is an equitable remedy that may only be asserted by a corporation when it suffers harm."  Id.  As the majority acknowledges, the plaintiff creditors actually constituted the entire creditor body in this New Jersey bankruptcy proceeding.  Buildings by Jamie, 230 B.R. at 44.  I also note that "the plaintiffs' counsel conceded that the creditors' claims belonged to the bankruptcy estate and acknowledged, therefore, that the creditors would not be named as co-plaintiffs with the trustee in the adversary complaint."  Id. (citation omitted).  For its part, the New York

8

The majority admits that "we leave the Diacetyl Plaintiffs, who allege that they have suffered serious personal injuries resulting from exposure to a harmful chemical, albeit not at the hands of Aaroma, with no apparent recourse against Aaroma." (Id. at 14.) I do not believe that either federal bankruptcy law or state law mandates such a drastic and harsh result. After all, the plaintiffs in this case are not trade creditors seeking to recover from the successor a specific amount of money owed by the debtor; they are men and women allegedly suffering from severe lung problems caused by exposure to a chemical made and sold by the debtor. Their state law claims accordingly implicate important state

---

bankruptcy court in Keene construed the creditors' complaints as invoking the "fourth exception" for successor liability, i.e., "'the transfer of assets is for the fraudulent purpose of escaping liability.'" Keene, 164 B.R. at 852-53 (citations omitted); see also, e.g., RDM Holdings, Ltd. v. Cont'l Plastics Co., 762 N.W.2d 529, 707 (Mich. Ct. App. 2008) ("Con-Plastics' role as an alleged successor is tied solely to plaintiffs' allegations concerning the fraudulent transfer of assets; however, we find that this aspect of the successor liability claim was subsumed under the UFTA [Uniform Fraudulent Transfer Act] claim, which was properly dismissed on the basis of res judicata. . . . For the same reasons, we will not permit plaintiffs to pursue any fraudulent transfer allegations against Con-Coatings under the guise of a successor liability claim."). In any event, I find Keene's reasoning with respect to successor liability and other third party theories to be at odds with the more liberal approach set forth by this Court in Foodtown.

interests, such as providing adequate compensation to individuals seriously injured by defective products. Cf., e.g., Foodtown, 296 F.3d at 169 ("With regard to *alter ego* liability in cases involving claims to pension benefits protected by ERISA, as amended by the MPPAA, there is 'a federal interest supporting disregard of the corporate form to impose liability.'" (quoting Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 460-61 (7th Cir. 1991))). The Diacetyl Plaintiffs additionally have not obtained any judgment against Emoral (or Aaroma) for a specified amount, and their claims accordingly have not been denominated. I further note that the Bankruptcy Court granted the Diacetyl Plaintiffs relief from the automatic stay to permit them "to litigate their products liability action against [Emoral] to judgment and to seek recovery from applicable insurance policies insuring the Debtor for their alleged injuries." (12/11/12 Order at 2.) The Bankruptcy Court, in turn, ordered that their recovery against Emoral "shall be limited to the extent of the insurance coverage provided to the Debtor and shall be paid from such insurance, if at all, and not from any other assets of the Debtor's estate." [2] (Id. at 2-3.) Given the circumstances, it is not surprising that a representative of the Trustee stated, at the

---

[2] I agree with the majority that its holding has no bearing on any remedy the Diacetyl Plaintiffs may have against Emoral the bankruptcy proceeding or against any of the other defendants named in the state court proceedings. Specifically, it appears the Diacetyl Plaintiffs' insurance proceed claims are currently pending before the New Jersey Superior Court, and our ruling today has no effect whatsoever on such claims.

10

hearing held by the Bankruptcy Court to decide whether to approve the Trustee's $500,000 settlement with Aaroma, that the Diacetyl Plaintiffs' successor liability claim against Aaroma "does not belong to the Estate" and that the Trustee accordingly "can't release it."  (A1277.)

Because the claims against Aaroma belong to the Diacetyl Plaintiffs, the Bankruptcy Court properly determined that "the Diacetyl plaintiffs' right to assert those claims [was] not affected by the settlement agreement [or] the settlement approval order" (A1388).  See, e.g., id. at 175 ("Because Appellant's cause of action is based on withdrawal liability under ERISA and is not considered property of the estate, Twin's release does not affect Appellant's claims.").  For the foregoing reasons, I would vacate the District Court's order, which reversed the order of the Bankruptcy Court denying Aaroma's motion to enforce the settlement approval order and to compel dismissal of the Diacetyl Plaintiffs' state court actions against Aaroma, and would remand for further proceedings.

11